CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
OCT 19 2022
LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| **BRENDA SUE WALLER, MD** ) <br> AND ) <br> **STRANGE FRUIT FARMS, LLC.** ) <br> *Plaintiffs* ) <br> ) <br> v. ) <br> ) <br> **TOMMIE NELSON** ) <br> and ) <br> **HUGH JOHNSON ENTERPRISES, INC.** ) <br> and ) <br> **JEFFREY LUSTBADER** ) <br> and ) <br> **COMMERICAL MORTGAGE CITY** ) <br> **CORPORATION** ) <br> and ) <br> **BRIAN K. HOWELL, SR.** ) <br> and ) <br> **BLACKSTAR MORTGAGE, LLC** ) <br> and ) <br> **ANGELA DAWSON** ) <br> and ) <br> **FORTY ACRE COOPERATIVE** ) <br> *Defendants* ) | Civil Action No.: 4:22CV00120 |

## CIVIL COMPLAINT

**COMES NOW**, Brenda Sue Waller, M.D. ("Dr. Waller") through counsel and moves this Court for entry of judgment in her favor and in this support of this complaint alleges as follows:

### PARTIES

1. Plaintiff, Dr. Brenda Sue Waller, is a resident of Halifax County in the State of Virginia. Dr. Waller is also a licensed, practicing physician in the State of Virginia. Dr. Waller's principle place of business is located at 2600 Memorial Ave #201, Lynchburg, VA 24501.

1

2. Strange Fruit Farms LLC. is a Limited Liability Company with its principal place of business located at 2008 Doctor Merritt Road, Nathalie Virginia 24577.

3. Defendant Tommie Nelson, is the Officer and Director for Hugh Johnson Enterprises, Inc., a Florida Corporation with his principal place of business located at 2041 Main Street, Miramar, Florida.

4. Defendant Hugh Johnson Enterprises Inc., is a Florida for profit Corporation with the Department of State Division of Corporations, with its principal place of business 2041 Main Street, Miramar, Florida 33025.

5. Defendant Jeffrey Lustbader, President and Agent for Commercial Mortgage City Corporation, a Florida Corporation with its principal place of business located at 22860 Harrow Wood Court, Boca Raton, Florida 33433.

6. Defendant Commercial Mortgage City Corporation, is a Florida Corporation with the Department of State Division of Corporations, with its principal place of business located at 22860 Harrow Wood Court, Boca Raton, Florida 33433.

7. Defendant Brian S. Howell, Sr. is Managing Partner and Agent for Blackstar Mortgage LLC, a Texas Limited Liability Company with its principal place of business located at 9202 Wellsworth Drive, Houston, Texas 77083.

8. Defendant Blackstar Mortgage, LLC, is a Limited Liability Company organization that primarily operates in the Mortgage Brokers Arranging for Loans, Using Money of Others business / industry within the Nondepository Credit Institutions sector. Brian S, Howell, Sr. is Managing Partner and Agent, a Texas Corporation with its principal place of business located at 9202 Wellsworth Drive, Houston, Texas 77083.

9. Defendant Angela Dawson, is an individual who currently resides at 7196 Bald Eagle Lane, Rutledge, Minnesota 55795, who serves as President of Forty Acre Cooperative.

10. Defendant Forty Acre Cooperative ("the Cooperative") is a Minnesota Cooperative with its headquarters located at 7196 Bald Eagle Lane, Rutledge, MN 55795. Forty Acre Coop is engaged in the business of agricultural production and is an association of agricultural produces, and all times relevant has been governed by Minnesota Statute Chapter 308A.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this case because it is an action for diversity of citizenship. Plaintiffs are a Virginia resident and a Virginia LLC. operating in the Commonwealth of Virginia. The defendants are located in the state of Florida, Minnesota, and Texas and the damages are in excess of $75,000.00, exclusive of interest, attorneys' fees, and costs The transaction or occurrence that gave rise to this action occurred within the jurisdiction.

12. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claim occurred in this judicial district and Defendants did business in this District when it committed the unlawful acts.

## FACTUAL BACKGROUND

13. Dr. Brenda Waller was at the time of the alleged fraudulent action, the Southeast Regional Director of a newly formed farmer's cooperative called Forty Acre Cooperative ("the Cooperative") created in 2019. *(see attached hereto Exhibit A).*

14. The Cooperative sought to purchase a brick and mortar building in order to grow, process, and distribute high-grade products derived from industrial hemp flower.

15. On or about April 2020, a building was located at 1 Ecomnets Way in Danville, Virginia 24540. (s*ee attached hereto as Exhibit B*)

16. Negotiations for the building began; the purchase price was negotiated to Eight hundred and forty-eight thousand dollars ($848,000.00).

17. Under the direction and guidance of Angela Dawson and the Forty Acre Cooperative, on or about April 15, 2020, a real estate contract was signed by Dr. Waller as an assignee of "Forty Acre Co-op." *(see attached hereto as Exhibit C)*.

18. Angela Dawson, the president of the Cooperative allegedly provided the Ten thousand dollars ($10,000.00) deposit on behalf of the Cooperative to the Hauser Realty Group as good faith in negotiating the contract to completion.

19. On or about April 25 2020, Sharon Mallory, Cooperative board member, provided the contact information for Jeff Lustbader (Defendant Lustbader) of Commercial Mortgage City Corporation after it was determined that the Cooperative would need $500,000.00 in funding, with a down payment of $350,000.00 to purchase the 1 Ecomnets Way building.

20. Defendant Lustbader arranged for two phone interviews with Tommie Nelson, Jr., (Defendant Nelson) of Hugh Johnson Enterprises, Inc. as a potential funder of the Five hundred thousand dollars ($500,000.00) to discuss basic background and capacity to repay the loan.

21. Dr. Waller agreed to provide a financial statement for funding consideration since the Cooperative had no financial history for effective credit at that time.

22. On information and belief Defendant Dawson was aware the Cooperative would not qualify for the loan.

23. Defendant Lustbader and Defendant Nelson requested a business plan for the proposed operations which was provided to Defendant Lustbader on June 15, 2020 after which Defendant Nelson agreed to a site visit of the property.

24. On or about June 18, 2020, Defendant Nelson visited the building at 1 Ecomnets Way Danville, Virginia.

25. On or about June 19, 2020 Defendant Nelson stated via text that (1) he would like to purchase the building for "you", (2) "Going into business, we would have to talk about more because I don't care for more than 1 partner."

26. Defendant Nelson was then provided all information for the realtor.

27. Defendant Nelson's terms of the loan which were calculated by Defendant Lustbader and forwarded to Dr. Waller by Defendant Nelson for either a 3-year or 5-year term at 8% (percent) interest on the $500,000 loan.

28. After consultation with Defendant Dawson, Ms. Mallory, Asa Patterson the agreement was that the $500,000.00 loan would be paid back in three years, with the Cooperative paying $350,000.00 as a down payment on the property.

29. An introductory conversation was had between Defendant Nelson and Defendant Dawson concerning the purchase of the property and terms of the loan repayment and the capacity to repay the loan.

30. On or about July 2020 Defendant Dawson scheduled a visit to Virginia, but failed to come for the agreed date.

31. On or about September 2020 Defendant Dawson scheduled a visit to Virginia to review the operations of Dr. Waller's farm, but failed to appear however, Defendant Dawson utilized videography of Dr. Waller's farm for the promotion of the 40 Acre Cooperative which remains on social media platforms to date.

32. During the purchase negotiations, Defendant Dawson, the President of the Cooperative did not follow-thru with the transaction in a timely manner and since Dr. Waller had signed the purchase agreement and was the Cooperative's Regional Director, she negotiated with the Cooperative that she would use her own funds for the down payment to move the transaction along.

33. Dr. Waller would be named as the purchaser of the property, the Cooperative would rent the building, and would remain involved with the ongoing business development and operations management. Defendant Dawson agreed to this plan.

34. Defendant Nelson made two additional trips to Danville Virginia in July 2020 and August 2020.

35. On or about June 26, 2020, Defendant Nelson sent his terms of the Five hundred thousand dollars ($500,000.00) loan and that an additional Thirty thousand dollars ($30,000.00) in closing costs would be required.

36. On or about July 11, 2020, Dr. Waller provided Defendant Nelson with a Twenty thousand dollars ($20,000.00) cashier's check as a show of good faith. (*See attached hereto as Exhibit D*)

37. Dr. Waller was informed by Defendant Nelson that the real estate closing would take place in approximately six weeks and that a portion of the good faith money would be shared with Defendant Lustbader as a portion of his fees.

38. Defendant Nelson allegedly handled the settlement matters with the realtor, closing attorney and insurance agency.

39. Dr. Waller only had contact with the realtor who was selling the property to the Cooperative.

40. On July 28, 2020, the purchase contract was re-written at the request of Defendant Nelson to remove the name of the Cooperative as the purchaser and replace it with Hugh Johnson Enterprises, Inc. as the purchaser. (*See attached hereto as Exhibit E*).

41. That same day, a wire transfer in the amount of $350,000.00 was transferred to Hugh Johnson Enterprises, Inc.'s account at Bank of America by Dr. Waller. (*See attached hereto as Exhibit F*)

42. Dr. Waller understood at direction of Defendant Nelson that this this money was to be forwarded to the closing attorney and held in escrow until closing.

43. Defendant Nelson was handling all of the closing details and Dr. Waller had no contact with the alleged closing attorney.

44. Michael Scearce (Mr. Scearce) of Hauser Realty Group, commercial division, in Danville, Virginia became frustrated with the difficulty he was having contacting Defendant Nelson and the delay in closing.

45. Mr. Scearce began contacting Dr. Waller regarding this matter.

46. Defendant Nelson indicated to Dr. Waller that he was continuing to put the financing in place for the building along with business development and that he was attempting to renegotiate the sales price as he thought there were too many discrepancies with how the contract was handled.

47. Defendant Nelson indicated that he had made attempts at contacting the banking officer in charge of the property, however felt that he was being blocked from contact.

48. Defendant Nelson presented Dr. Waller with a loan pre-qualification document dated 9/15/2020 in the amount of Three million, nine hundred thousand dollars ($3,900,000.00) from Blackstar Mortgage, LLC. indicating that the funds were available to move forward with the closing.  (*See attached hereto as Exhibit G*)

49. Blackstar Mortgage, LLC was brought in by Defendant Nelson to provide additional revenue for operations and product development.

50. Defendant Nelson communicated to Dr. Waller that he wanted to be a partner in the business and not just a lender which is why he sought out Blackstar Mortgage, LLC., for the additional revenue.

51. On or about November 17, 2020, Dr. Waller wire transferred $70,000.00 to Defendant Nelson for closing fees and equipment acquisition in order to move forward. *(See attached hereto as Exhibit H)*

52. Defendant Lustbader contacted Dr. Waller November 28, 2020 offering "assistance in helping to get the transaction complete with Tommie."

53. Defendant Lustbader was informed that Defendant Nelson had yet to provide any business documents and seemed to be evasive about details of the closing.

54. On or about January 20, 2021, Dr. Waller wire transferred $10,000.00 to Defendant Nelson for additional charges. (*See attached hereto as Exhibit I*)

55. Citing some unexpected events, Defendant Nelson did not move forward with the deal and the seller of the real estate cancelled the purchase agreement. (*See attached hereto as Exhibit J*)

56. Dr. Waller demanded the $450,000.00 returned to her immediately but Defendant Nelson said he needed additional time to return the funds to her whereas, he previously indicated that the money was being held in escrow.

57. After filing a fraud complaint with Wells Fargo Bank and several communications with Defendant Nelson including demand phone calls, text messages, and emails, on or about August 25 2021, Defendant Nelson provided an "oral" promissory note to return the $450,000.00 to Dr. Waller no later than October 31, 2021. *See attached hereto as Exhibit K.*

58. The funds were never paid and the only explanation Defendant Nelson could give was that "this other deal went bad" and he needed additional time to put the money together.

59. Dr. Waller contacted Defendant Lustbader May 2022 to inquire if he had any knowledge of the whereabouts of Defendant Nelson given the unresolved return of funds. Defendant Lustbader indicated that he had been in contact with Defendant Nelson, but alleged no knowledge of the missing funds.

60. The last written demand communication was sent on or about June 14, 2022 to Defendant Nelson, Hugh Johnson Enterprises, and Defendant Jeff Lustbader. (*See attached hereto as Exhibit L*).

61. To date Defendant Nelson and Defendant Lustbader has stopped responding to Dr. Waller's telephone calls, emails, or text messages.

### COUNT I: FRAUD-VIRGINIA CODE § 18.2 - 178.

62. Plaintiff incorporates Paragraphs 1 through 61 as if fully rewritten herein.

63. In Virginia, the elements of actual fraud are: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.

64. In an absolute deception Dr. Waller believed she entered into a mortgage purchase agreement with Tommie Nelson, Jr., a/k/a/ Hugh Johnson Enterprises, Inc., to purchase a building was located at 1 Ecomnets Way in Danville, Virginia 24540.

65. Defendant Nelson affirmatively misrepresented his financial position while negotiating with Dr. Waller as a lender, which are material considerations for any potential commercial buyer.

66. Dr. Waller relied on Defendants' representations that they were able to provide the necessary funding if she provides a sum of over $450,000.00 in closing fees, good faith monies, and equipment acquisition funding.

67. Defendants acted with actual malice when they knowingly and intentionally caused the Dr. Waller to rely on their misrepresentations and thereby be damaged.

68. As a result of their reasonable reliance on the Defendants' misrepresentations, Dr. Waller suffered actual and consequential damages, lost wages, and legal and attorneys' fees.

## COUNT II - BREACH OF CONTRACT, DUTY OF GOOD FAITH AND FAIR DEALING

69. Plaintiff incorporates Paragraphs 1 through 68 if fully rewritten herein.

70. In Virginia, the elements of a claim for breach of an implied covenant of good faith and fair dealing are: (1) a contractual relationship between the parties; and (2) a breach of the implied covenant.

71. Dr. Waller and the Defendants entered into a contractual relationship when they executed the Commercial Sales Contract for the sale of the Property on July 28, 2020.

72. The Defendants never provided the funding and failed to return the money owed to Dr. Waller.

73. Defendants had a duty to honestly disclose the essential facts of the transaction and to otherwise act honestly as to the facts of the transaction.

74. This failure to act honestly amounts to the misrepresentation of a material fact and was done with the intent and for the purpose of inducing Dr. Waller to give the Defendants money totaling over $450,000.00 to purchase the Property.

75. As a direct result of Defendants' acts and omissions incident to the Commercial Sales Contract, Dr. Waller has suffered actual and consequential damages, lost wages, legal fees, and attorneys' fees.

### COUNT III - FRAUD IN THE INDUCEMENT TO CONTRACT VIRGINIA CODE § 18.2 - 178.

76. Plaintiff incorporates Paragraphs 1 through 75 if fully rewritten herein.

77. The erroneous belief that she was entering into a contract with legitimate entities that were financially able to provide the funding for which she had contracted--the purchase of a building to facilitate the advancement of the business--induced Dr. Waller into entering the contract with Defendants, including two Corporations and an LLC presumably legally able to conduct business in the Commonwealth of Virginia.

78. The material misrepresentations were expressly contained in the contract provided by Defendants to Dr. Waller, and was implicitly made by Defendants to Dr. Waller in presenting her with the contract for her review and signature.

79. Dr. Waller had the right to rely on the misrepresentation in the written agreement and did in fact rely upon it in deciding to enter the contract and to fulfill her end of the bargain, by paying over $450,000.00.

80. The purported contract entered into between Defendants and Dr. Waller, for the purchase of a brick and mortar building in order to grow, process, and distribute high-grade products derived from industrial hemp flower was known by all parties to be for the benefit of Dr. Waller--the named party to the contract--and Strange Fruit Farms, a third-party beneficiary of the contract, thereby providing Strange Fruit Farms LLC. with legal standing to assert claims against the Defendants to recover damages suffered by both Dr. Waller and Strange Fruit Farms LLC.

81. The Defendants material misrepresentation that they are legitimate entities authorized to provide mortgage funding and do business in Virginia, a fact upon which Dr. Waller had the right to and did in fact rely, and which the Defendants knew or should have known was false, constituted fraud in the inducement to contract.

82. Plaintiffs respectfully request that this Court enter judgment in their favor on their cause of action of fraud in the inducement to contract, and order a rescission of the contract. Plaintiffs further request damages in the amount of $450,000--the aggregate amount they paid the Defendants to place them in substantially the same position they were financially immediately before entering the contract. Plaintiffs further request $1,550,000 in compensatory damages for emotional distress suffered as a consequence of their having been duped into squandering this occasion to further a substantial business opportunity, along with her friends and loved ones. Based on those damages and/or the damages awarded for rescission of the contract, Plaintiffs further request an award of punitive damages in the amount of $350,000, or whatever lower amount a jury awards.

## COUNT IV -VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT

83. Plaintiff incorporates Paragraphs 1 through 82 if fully rewritten herein.

84. The fraud, deception, and misrepresentation of material fact described, *supra*, constituted violations of VA. CODE ANN. § 59.1-200(A)(1), (2), (3), (14), (57), and (60).

85. Pursuant to VA. CODE ANN. § 59.1-204(A) Plaintiffs seek an award of treble damages of their $350,000.00 payment to the Defendants that was obtained through his fraudulent inducement to contract, for total damages of $450,000.00.

86. Pursuant to VA. CODE ANN. § 59.1-204(B), Plaintiffs request an award of their reasonable attorney's fees and court costs.

## COUNT V-BREACH OF WRITTEN CONTRACT

87. Plaintiffs incorporates Paragraphs 1 through 86 if fully rewritten herein.

88. Plaintiffs' Exhibit E, attached hereto, comprises a valid enforceable written agreement.

89. Defendants breached the terms of the Agreement by failing to provide any of the work-product specified therein.

90. Plaintiffs, have sustained damages in the amount of $450,000, the amount they spent for nothing, since they received no work-product from Defendants

## COUNT VI - CONVERSION

91. Plaintiffs incorporates Paragraphs 1 through 90 if fully rewritten herein.

92. Defendants received payment for down payment on a commercial loan.

93. Defendants never conveyed the monies nor returned the monies to Plaintiffs.

94. Defendant Nelson stated he would return the monies to Plaintiffs.

95. Defendant Nelson after committing to return the monies paid by Plaintiffs failed to return the monies to Dr. Waller.

96. Defendants have deprived Plaintiffs of her money for an indefinite time.

97. The deprivation was inconsistent with Plaintiff's interests.

### COUNT VII-18 U.S.C.A. §1343 FRAUD BY WIRE, RADIO OR TELEVISION

98. Plaintiffs incorporates Paragraphs 1 through 97 if fully rewritten herein.

99. Defendants are in violation of 18 U.S.C.A. §1343 as follows:

> "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title"

100. Pursuant to the events described in paragraphs 13-97, *supra,* the Defendants knowingly devised or knowingly participated in the schemes or artifices to defraud Plaintiffs or to obtain the money or property of Plaintiffs by means of false or fraudulent pretenses, representations, or promises.

101. Defendants acting singly and in concert, personally or through their agents, as co-conspirators, or as aiders and abettors, used wire transmission "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out the scheme, within the meaning of 18 U.S.C. § 1343.

102. In advancing, furthering, executing, concealing, conducting, participating in, or carrying out the scheme, the Defendants specifically used the wire transmission or caused the wire transmission to be used to receive monies described in paragraphs 13-97, *supra.*

103. The use of the mails wire described above was committed by the Defendants with the specific intent to defraud Plaintiffs or for obtaining the money or property of Plaintiffs by means of false or fraudulent pretenses, representations, or promises.

104. Defendants' acts of wire fraud are in violation of 18 U.S.C. § 1343 and constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

## COUNT VIII - CIVIL CONSPIRACY

105. Plaintiffs incorporates Paragraphs 1 through 104 as if fully rewritten herein.

106. Defendants illegally, maliciously, and wrongfully conspired with one another with *the* intent to *and* for the illegal purpose of committing fraudulent commercial mortgage lending proposals through **a** bait and switch scheme, a scheme that offered illusory promises and conversion of the money and property of the Plaintiffs.

107. Defendants, in combination conspired to obtain money through their fraudulent commercial mortgage lending proposal schemes.

108. This conspiracy resulted in the illegal, unlawful, or tortious activity of fraud and violations of the Racketeer Influenced and Corrupt Organizations Act.

109. As a result of the conspiracy from the Defendants illegal, wrongful, or tortious acts, Plaintiffs sustained the following damages: loss of money for purchasing commercial property, administrative fees, emotional damages and other damages that may have yet to be determined.

110. As a direct and proximate result of Defendants' conspiracy to obtain Plaintiff's assets, Plaintiffs have incurred and/or will continue to incur substantial damages in an amount to

be determined by the Court, but which is in excess of four hundred and fifty thousand dollars ($450,000.00).

### COUNT IX- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

111. Plaintiffs incorporates Paragraphs 1 through 110 as if fully rewritten herein.

112. Defendants fraudulent representations and illegal activities were made intentionally, outrageously and maliciously and have caused Plaintiffs to suffer humiliation, outrage, indignation, sleepless nights, and severe emotional distress.

113. Defendants continued in their enterprise of fraudulent behavior with reckless disregard to the emotional impact to the Plaintiffs.

114. As a direct and proximate result of Defendants Intentional Infliction of Emotional Distress, Plaintiffs have incurred and/or will continue to incur emotional distress and substantial damages in an amount to be determined by the Court, but which is in excess of four hundred and fifty thousand dollars ($450,000.00).

**WHEREFORE**, Plaintiffs, Brenda Sue Waller, MD and Strange Fruit Farms LLC. requests damages as follows:

A. Against all defendants, jointly and severally, for compensatory damages in the amount of two million dollars ($2,000,000.00);

B. Against all defendants, an award of punitive damages in an amount to be determined at trial

C. A finding that the material misrepresentations made by Defendants were made willfully and wantonly and/or with a reckless disregard for the truth;

D. Pre and post judgment interest at the highest applicable legal or statutory rate;

E. For costs and reasonable attorneys' fees pursuant to 42 U.S.C. Sec. 1988; and

F. For such further relief as the Court deems just and proper.

**A JURY TRIAL IS DEMANDED**

/s/ Steven D. McFadgen, Sr.
Steven D. McFadgen, Sr., Esq. (VSB#83273)
McFadgen Law, PLC
3831 Old Forest Road, Suite 6
Lynchburg, Virginia 24501
Telephone:	(434) 385-4579
Facsimile:	(888) 873-1048
muchmorelaw@gmail.com
*Counsel for the Plaintiffs*