IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUN 21 2023
LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

| | |
|---|---|
| BRENDA SUE WALLER, M.D., *et al.*, | ) |
| Plaintiffs, | ) Case No. 4:22-cv-00120 |
| v. | ) **MEMORANDUM OPINION** |
| TOMMIE NELSON, *et al.*, | ) By: Hon. Thomas T. Cullen |
| | ) United States District Judge |
| Defendants. | ) |

Plaintiffs Brenda Sue Waller, M.D. and Strange Fruit Farms, LLC (collectively, "Plaintiffs") brought this action against eight Defendants—Tommie Nelson and Hugh Johnson Enterprises, Inc.;[1] Commercial Mortgage City Corporation ("CMC") and Jeffrey Lustbader (collectively, the "CMC Defendants"); Blackstar Mortgage, LLC ("Blackstar") and Brian K. Howell (collectively, the "Blackstar Defendants"); and Forty Acre Cooperative ("Forty Acre") and Angela Dawson (collectively, the "Forty Acre Defendants")—asserting claims of actual fraud, breach of good faith and fair dealing, fraud in the inducement to contract, violations of the Virginia Consumer Protection Act, breach of a written contract, conversion, wire fraud, civil conspiracy, and intentional infliction of emotional distress.

---

[1] To date, Hugh Johnson Enterprises, Inc., and Tommie Nelson, who, Plaintiffs contend, swindled them out of hundreds of thousands of dollars through a series of false promises and representations about his intent and ability to finance the purchase of a building, have not responded to this action, and Nelson apparently cannot be located. Although Plaintiffs filed a notice from the Secretary of State of Florida indicating that it had accepted substitute service of process as to Hugh Johnson Enterprises, *see* Fla. Stat. § 48.081, Nelson was not timely served and Plaintiffs' claims against him were dismissed without prejudice. (Order, May 17, 2023 [ECF No. 61].) The serious and detailed allegations of fraud against Nelson and his company, which, *if true*, could subject him to civil as well as criminal liability, do not suffer from the same jurisdictional and pleading defects as those pertaining to the other defendants.

This matter is now before the court on the CMC Defendants' motion to dismiss (ECF No. 26) and Plaintiffs' motion for leave to amend their complaint (ECF No. 62). These motions have been fully briefed by the parties and the court held oral argument on June 8, 2023,[2] making them ripe for decision. For the following reasons, the court will grant the CMC Defendants' motion to dismiss and deny Plaintiffs' motion for leave to amend their complaint.

## I. BACKGROUND

In 2020, Forty Acre, a newly formed farmer's cooperative, sought to purchase a brick-and-mortar building for the purposes of growing, processing, and distributing products derived from hemp flower. (Compl. ¶¶ 13–15 [ECF No. 1]). At that time, Dr. Waller was serving as Forty Acre's Southeast Regional Director. (*Id.* ¶ 13.)

In April of 2020, Forty Acre located a suitable building in Danville, Virginia, and negotiated a purchase price of $848,000 for the property. (*Id.* ¶¶ 15–16.) At the direction of Angela Dawson, Forty Acre's President, Dr. Waller signed a real estate contract as an assignee of "Forty Acre Co-op." (*Id.* ¶ 17; Pls.' Ex. C [ECF No. 1-1].) Dawson, on behalf of Forty Acre, then allegedly provided a $10,000 deposit to the Hauser Realty group as a good-faith payment for negotiating the real estate contract to completion. (*Id.* ¶ 18.)

Shortly thereafter, it was determined that Forty Acre would require $500,000 in total funding to purchase the building, including a down payment of $350,000. (*Id.* ¶ 19.) In a bid to secure funding, Sharon Mallory, a member of Forty Acre's board of directors, acquired

---

[2] During oral argument, Plaintiffs conceded that their allegations failed to state claims against the Forty Acre Defendants. As such, the court granted the Forty Acre Defendants' motion to dismiss with prejudice. (Order, June 9, 2023 [ECF No. 70].)

contact information for Jeffrey Lustbader and CMC.[3] (*Id.* ¶ 19.) Lustbader, in turn, arranged for two interviews between Forty Acre and Tommie Nelson, President of Hugh Johnson Enterprises, a potential funder of the loan. (*Id.* ¶ 20.) Because Forty Acre did not have any credit, Dr. Waller provided a financial statement and a business plan for the proposed operations to Nelson and Lustbader for funding consideration. (*Id.* ¶¶ 21, 23.) After receiving Dr. Waller's financial statement and business plan, Nelson visited the building site on June 18, 2020. (*Id.* ¶ 24.)

The next day, Nelson texted Dr. Waller and told her that he would like to purchase the building for her and that they should speak further about a potential business relationship because Nelson did not "care for more than one partner." (*Id.* ¶ 25.) Eventually, Nelson agreed to provide a loan for the purchase of the Danville property and sent the proposed loan terms to Dr. Waller and Forty Acre. (*Id.* ¶ 27.) Lustbader, in turn, calculated Nelson's terms on the loan; Nelson proposed a $500,000 loan, to be paid back in either three- or five-years, at eight percent interest. (*Id.*) Forty Acre accepted these terms and agreed that it would pay back the loan in three years. (*Id.* ¶ 28.)

Following this preliminary agreement, Nelson and Dawson discussed the purchase of the Danville property and Forty Acre's ability to repay the loan. (*Id.* ¶ 29.) Dawson also scheduled multiple visits to Virginia to view the property and review Dr. Waller's planned operations, but she failed to appear on any of the scheduled dates. (*Id.* ¶¶ 30–31.) Despite these failures to appear, negotiations continued until Dawson ultimately failed to "follow-thru [*sic*] on the transaction in a timely manner." (*Id.* ¶ 32.) To save the deal, Dr. Waller agreed to

---

[3] The CMC Defendants are citizens of Florida. (Compl. ¶¶ 5–6.)

use her own funds for the down payment. (*Id.*) At this point, all parties agreed that Dr. Waller would be the named purchaser of the Danville property and Forty Acre would rent the building while remaining involved with ongoing business development and operations management. (*Id.* ¶ 33.)

On June 26, 2020, Nelson submitted his loan terms, but added that an additional $30,000 would be required for closing costs. (*Id.* ¶ 35.) Dr. Waller then sent Nelson a $20,000 check as a demonstration of good faith. (*Id.* ¶ 36; Pls.' Ex. D [ECF No. 1-1].) Nelson then allegedly told Dr. Waller that the real estate closing would take place in approximately six weeks and that a portion of the good-faith money would be shared with Lustbader as a portion of his fees for calculating Nelson's loan terms. (*Id.* ¶ 37.)

But despite this apparent agreement on the loan terms and the provision of good-faith monies, the real estate purchase contract was re-written on July 28, 2020, at Nelson's behest, to replace Forty Acre with Hugh Johnson Enterprises, Inc., as the purchaser. (*Id.* ¶ 40; Pls.' Ex. E [ECF No. 1-1].) That same day, with the apparent understanding that the money was to be forwarded to the closing attorney for escrow, Dr. Waller wired $350,000 from her bank account to Hugh Johnson Enterprises' account. (*Id.* ¶¶ 41–42.) Because Nelson was supposed to handle the details related to the closing, Dr. Waller had no contact with the closing attorney. (*Id.* ¶ 43.)

Around this time, Michael Scearce, on behalf of Hauser Realty Group, expressed concerns to Dr. Waller regarding the delay in closing and his inability to reach Nelson about it. (*Id.* ¶¶ 44–45.) Nelson apparently told Dr. Waller that he was still working on the financing

for the building and business, as well as attempting to renegotiate the sales price, but that he felt as though he was being "blocked from contact." (*Id.* ¶¶ 46–47.)

Despite Nelson's suggestion that he was being "blocked," he nevertheless presented Dr. Waller with a loan pre-qualification document from Blackstar in the amount of $3,900,000 and indicated that the funds were available to move forward with the scheduled closing. (*Id.* ¶ 48; Pls.' Ex. G [ECF No. 1-1].) Apparently, Nelson secured this pre-qualification document to demonstrate his desire to partner with Dr. Waller and not merely to remain a lender. (*Id.* ¶ 50.) Based on these representations, on or about November 17, 2020, Dr. Waller transferred another $70,000 to Nelson to cover closing costs and equipment acquisition. (*Id.* ¶ 51; Pls.' Ex. H [ECF No. 1-1].)

Eleven days later, Lustbader contacted Dr. Waller to offer "assistance in helping to get the transaction complete with [Nelson]." (*Id.* ¶ 52.) Dr. Waller then informed Lustbader that Nelson had not yet provided any business documents and seemed to be evasive regarding the details of the scheduled closing. (*Id.* ¶ 53.) Despite her concern that Nelson was being evasive, Dr. Waller sent a final $10,000 payment to Nelson for additional charges on January 20, 2021. (*Id.* ¶ 54; Pls.' Ex. I [ECF No. 1-1].)

Following this payment, Nelson, citing unexpected events, declined to move forward with the deal, and the closing was cancelled. (*Id.* ¶ 55; Pls.' Ex. J [ECF No. 1-1].) Dr. Waller then demanded that the $450,000 in already-paid funds be returned to her, but Nelson claimed that he needed additional time to return her funds. (*Id.* ¶ 56.) At that point, Dr. Waller filed a fraud complaint with her bank, which prompted Nelson to execute an "oral" promissory note to return the money to Dr. Waller by October 31, 2021. (*Id.* 57; Pls.' Ex. K [ECF No. 1-1].)

When these funds were not refunded, Dr. Waller contacted Lustbader to inquire about the missing funds; Lustbader said he had been in contact with Nelson, but that he had no knowledge of any missing funds. (*Id.* ¶¶ 58–59.)

Following this series of events, Plaintiffs filed this action in this court on October 19, 2022, asserting claims for actual fraud (Count I); breach of good faith and fair dealing (Count II); fraud in the inducement to contract (Count III); violations of the Virginia Consumer Protection Act (Count IV); breach of written contract (Count V); conversion (Count VI); wire fraud (Count VII); civil conspiracy (Count VIII); and intentional infliction of emotional distress (Count IX). The CMC Defendants have since moved to dismiss each of Plaintiffs' claims, contending that Plaintiffs have failed to state a claim or make a *prima facie* showing that personal jurisdiction would be proper in Virginia. (ECF No. 26.)

In addition, after this motion was fully briefed, Plaintiffs filed a motion for leave to amend their complaint. (ECF No. 62.) In so doing, Plaintiffs assert many new claims in addition to those reasserted from their initial complaint,[4] as well as new jurisdictional bases. For the following reasons, the CMC Defendants' motion to dismiss (ECF No. 26) will be granted and Plaintiffs' motion for leave to amend her complaint (ECF No. 62) will be denied.

---

[4] In their opposition to the CMC Defendants' motion to dismiss, Plaintiffs conceded that their complaint failed to state claims for: breach of good faith and fair dealing (Count II); breach of written contract (Count V); conversion (Count VI); wire fraud (Count VII); civil conspiracy (Count VIII); and intentional infliction of emotional distress (Count IX). (Pls.' Br. Opp. Mot. to Dismiss at 16 [ECF No. 31].) In Plaintiffs' subsequent motion for leave to amend their complaint, however, their proposed amended complaint reasserts their claims for breach of good faith and fair dealing, breach of a written contract, conversion, and wire fraud, while also alleging new claims for statutory conspiracy, common law conspiracy, punitive damages, unjust enrichment, and negligent misrepresentation. (*See* Pls.' Am. Compl. ¶¶ 134–223 [ECF No. 62-2].)

## II. DISCUSSION

In support of their motion to dismiss, the CMC Defendants argue that Plaintiffs' complaint is devoid of facts sufficient to establish personal jurisdiction over them, and that the complaint fails to state a claim. (Defs.' Br. Supp. Mot. to Dismiss p. 4, 10 [ECF No. 27].) In addition, Defendants argue that granting Plaintiffs leave to amend would be futile because the facts contained in their proposed amended complaint do not cure the jurisdictional and pleading defects in the initial complaint. (Defs.' Br. Opp. Mot. Am. p. 2–3, 7 [ECF No. 67].)

Having reviewed the initial complaint, proposed amended complaint, and the parties' respective briefs, the court concludes that it cannot properly exercise personal jurisdiction over the CMC Defendants, that the proposed amended complaint fails to correct these defects, and that granting Plaintiffs leave to amend would be futile.

### A. Motion to Dismiss for Lack of Personal Jurisdiction

The CMC Defendants first argue that they are not subject to either general or specific personal jurisdiction in Virginia because Plaintiffs' complaint does not allege sufficient facts that would make jurisdiction proper in this court.

#### 1. Rule 12(b)(2) Standard

A party may move to dismiss a case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). The plaintiff must make a *prima facie* showing that there is a sufficient jurisdictional basis to survive a motion to dismiss. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). In

determining whether the plaintiff has carried this burden, "the court must take all disputed facts and reasonable inferences" in the plaintiff's favor. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *see also Combs v. Baker*, 886 F.2d 673, 676 (4th Cir. 1989). The pleadings and motion papers must allege "sufficient facts to create a prima facie showing" of personal jurisdiction over the objecting defendant. *Byrd v. Lloyd*, No. 4:06CV00053, 2006 WL 3373177, at *2 (W.D. Va. Nov. 21, 2006); *see Combs*, 886 F.2d at 676.

### 2. Analysis

"A lawful assertion of personal jurisdiction over a defendant requires satisfying the standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). If a potential exercise of jurisdiction complies with the state's long-arm statute, the Constitution "requires that the defendant have sufficient minimum contacts with the forum state." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry when Virginia is the forum state. *Id.* at 293. "A Virginia court thus has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process." *Tire Eng'g & Distribution, LLC*, 682 F.3d at 301.

The Due Process Clause contemplates that a court may assert jurisdiction over a nonresident defendant through either of two independent avenues. First, a court may find specific jurisdiction "based on conduct connected to the suit." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). "If the defendant's contacts with the State

are also the basis for the suit, those contacts may establish specific jurisdiction." *Id.* at 712. Second, a court may exercise general personal jurisdiction, which requires a more demanding showing of "continuous and systematic" activities in the forum state. *Id.*

General jurisdiction applies when a defendant's activities are "so continuous and systematic as to render them essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (cleaned up). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," which are the places where it was incorporated and where it maintains its principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). But here, Plaintiffs do not contend that the CMC Defendants are "at home" in, or otherwise maintain continuous and systematic contacts with, Virginia. As such, the determinative issue for the court is whether the CMC Defendants are subject to specific personal jurisdiction.

Specific jurisdiction exists when the defendant's contacts with the forum state create the basis of the suit. *Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d at 397. In other words, a defendant must have purposefully directed activities at the forum, and the injury underlying the suit must arise from those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). This analysis is not mechanical, and a court should weigh the "totality of the facts" when determining whether to exercise jurisdiction. *See Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016).

To determine whether a court may exercise specific personal jurisdiction over a defendant, courts in the Fourth Circuit apply a three-part test: "(1) the extent to which the

defendant purposefully availed itself of the privilege of conducting activities in the State;[5] (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."[6] *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (cleaned up) (quoting *ALS Scan, Inc.*, 293 F.3d at 712.)

In the light most favorable to the Plaintiffs, the CMC Defendants' alleged contacts with Virginia include arranging two phone interviews with Nelson, requesting a business plan for Forty Acres' proposed operations, calculating loan terms, and offering assistance to complete the real estate transaction with Nelson.

Looking to the relevant factors, the CMC Defendants did not purposefully avail themselves of conducting business in Virginia. *See Sneha Media*, 911 F.3d at 198–199 (listing

---

[5] In identifying whether a defendant in the business context has purposefully availed themselves of the law of the forum state, the Fourth Circuit has identified a non-exclusive list of factors:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198–199 (4th Cir. 2018).

[6] In determining whether exercising personal jurisdiction would be reasonable, courts consider five additional factors:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Engineers Corp., v. Geometric, Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009) (cleaned up).

purposeful availment factors). Defendants do not have offices, agents, or property in Virginia. They also never made in-person contact with a resident of the state. Their alleged contacts—responding to inquiries from a Virginia resident regarding loan servicing—do not indicate deliberate engagement in significant, long-term business activities within the state. The CMC Defendants simply referred Dr. Waller to Nelson; *he* was to provide her a loan and *he* was going to conduct business in the state of Virginia. Finally, there was never any contract, privity, or choice-of-law clause between Dr. Waller and the CMC Defendants that would justifiably trigger litigation in Virginia.

As for the third *Sneha* factor—reaching into the state to conduct business—courts give great weight to *who initiated the contact* between the parties. *CFA Inst.*, 551 F.3d at 295 n.17 ("Pursuant to the applicable precedent, we are entitled to accord special weight to the fact that it was [the defendant] that initiated contact with the [plaintiff]."). But Lustbader, acting on behalf of CMC, did not solicit or *reach into* Virginia. Rather, he is a Florida citizen, and Dawson, who was acting on behalf of Forty Acre, contacted him. The only colorable "initiation" alleged is Lustbader's offer to help Dr. Waller complete the real estate transaction with Nelson, which Nelson initiated, and which was already in the works by the time Lustbader became involved. At most, Defendants merely continued a previously established business arrangement, which in the court's view, is fundamentally different than soliciting new business in Virginia.

Moreover, in analyzing the "nature, quality, and extent" of the parties' communications, it is well settled that "mere phone calls and letters, and arguably fax communications, in furtherance of a transaction, are insufficient to form a basis for personal jurisdiction." *Vill. Lane Rentals, LLC v. Cap. Fin. Grp.*, 159 F. Supp. 2d 910, 915 (W.D. Va.

- 11 -

2001) (quoting *Superfos Invs. Ltd. v. FirstMiss Fertilizer, Inc.*, 774 F. Supp. 393, 397 (E.D. Va. 1991)). Lustbader's only communications with Plaintiffs consisted of phone calls, with the majority being initiated by a third-party. As such, Lustbader's contacts are hardly sufficient to create the reasonable expectation that he and CMC could be forced to defend against a lawsuit in Virginia. *See Burger King*, 471 U.S at 474. Accordingly, the CMC Defendants never purposefully availed themselves of the benefits of conducting business in Virginia.

In resisting this conclusion, Plaintiffs argue that the court may exercise jurisdiction over the CMC Defendants because they "used a computer wire transaction to execute a fraudulent operation . . . ." in Virginia. (Pls.' Br. Opp. Mot. to Dismiss at 12.) Plaintiffs are correct that "[a] court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state."[7] *Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d at 397–98. But the court "need not credit conclusory allegations in determining whether a plaintiff has met [her] burden of making a prima facie showing of personal jurisdiction." *Orion Cap., LLC v. Promier Prod., Inc.*, No. 4:21-CV-00015, 2021 WL 4943501, at *2 (W.D. Va. Oct. 22, 2021) (cleaned up) (quoting *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 407 (D.S.C. 2012)).

Here, Plaintiffs' threadbare and conclusory allegations do not state a claim for fraud, especially when viewed under the heightened pleading standard set forth in Rule 9(b).[8] As

---

[7] This so-called effects test of specific jurisdiction is typically construed to require that the plaintiff establish that: "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d at 398 n.7.

[8] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). These circumstances include "the time, place, and contents of the false

such, the Plaintiffs cannot plausibly contend that the CMC Defendants committed fraud in Virginia and thus fail the effects test. *See Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d at 398 n.7. Indeed, "when plaintiffs make fraud-based claims against multiple defendants, [as here,] the plaintiff must plead with specificity against each defendant . . . and allegations made against undifferentiated defendants violate this rule." *Foster v. Wintergreen Real Est. Co.*, No. 3:08CV00031, 2008 WL 4829674, at *6 (W.D. Va. Nov. 6, 2008), *aff'd,* 363 F. App'x 269 (4th Cir. 2010) (cleaned up). Plaintiffs do not differentiate between any of the Defendants with respect to their alleged fraud claims. Instead, Plaintiffs rely, almost exclusively, on the fraudulent actions of Nelson and impute his apparent misconduct to all named defendants without a logical nexus and in conclusory fashion. As such, Plaintiffs fail to specifically allege the "time, place, and contents" of any specific misrepresentation by the CMC Defendants, despite an obligation to do so under Rule 9(b). *See Harrison*, 176 F.3d at 784. Plaintiffs fail to allege any specific misrepresentation by the CMC Defendants, let alone one that was "made intentionally and knowingly, with intent to mislead." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999).

### 3. Motion to Dismiss Conclusion

Because Plaintiffs' initial complaint fails to allege sufficient facts that would confer personal jurisdiction over the CMC Defendants, the court will grant the CMC Defendants' motion to dismiss for lack of personal jurisdiction.

---

representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Walker v. Hill*, No. 21-1803, 2023 WL 129436, at *5 (4th Cir. Jan. 9, 2023) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

**B. Motion To Amend**

The CMC Defendants argue that granting Plaintiffs' motion to amend would be futile because the facts contained in the proposed amended complaint do not cure the defective initial complaint. (Defs.' Br. Opp. Mot. Am. at 2–7.) The court agrees.

Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend a pleading with the court's leave, and that the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But courts may deny leave to amend if the proposed amendments would be futile. *Save Our Sound OBX, Inc. v. N.C. DOT*, 914 F.3d 213, 228 (4th Cir. 2019). "A proposed amendment is futile when it is clearly insufficient or frivolous on its face . . . [or] if the claim it presents would not survive a motion to dismiss." *Id.* (cleaned up). Having previously determined that the initial complaint fails to allege facts sufficient to confer jurisdiction over the CMC Defendants, leave to amend will be considered futile if Plaintiffs' amended complaint does not cure the initial complaint's jurisdictional defects.

Plaintiffs' amended complaint attempts to assert several new grounds intended to subject the CMC Defendants to personal jurisdiction in this court, including: the CMC Defendants' purported internet presence; the Racketeering Influenced and Corrupt Organizations Act's ("RICO") nation-wide service of process provision; and a provision of Virginia's long-arm statute. (Am. Compl. ¶¶ 5–6, 13, 15–17 [ECF No. 62-2].) The court will address each of these newly asserted, but ultimately unpersuasive, grounds in turn.

**1. Internet Activity**

The court is unconvinced that it may exercise personal jurisdiction over the CMC Defendants based on their internet presence as alleged in the amended complaint.

The amended complaint asserts that Lustbader's LinkedIn profile page and CMC's website state that Defendants provide "nationwide" and "international" commercial mortgage services. (*Id.* ¶¶ 5–6.) But general marketing claims regarding nationwide services do not subject the CMC Defendants to personal jurisdiction in any one state, absent additional facts. *See Jackson v. Michalski*, No. 3:10-CV-00052, 2011 WL 3679143, at *9 (W.D. Va. Aug. 22, 2011) ("The authorship of books and articles that are sold nationwide and available for viewing on the internet does not subject the author to jurisdiction in every state in which they are purchased or accessed without an additional showing of that person's continuous and systematic contacts with the forum state."); *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 490 (W.D. Va. 2019) ("[T]he mere 'act of placing information on the Internet' is not sufficient by itself to 'subject that person to personal jurisdiction in each state in which the information is accessed.'" (cleaned up) (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002)).

Like *Edwards*, there are no allegations suggesting that the CMC Defendants "took affirmative steps to direct these [online] communications into Virginia or had any intent to target or focus on Virginia . . . or otherwise avail themselves of the benefits and protections of the laws of Virginia." *Id.* at 494. As such, the CMC Defendants' internet presence does not, without more, permit the court to exercise personal jurisdiction over them.

### 2. RICO

The court cannot exercise personal jurisdiction pursuant to RICO's nation-wide service of process provision because Plaintiffs' underlying RICO claim is not colorable as alleged in the amended complaint.

Plaintiffs are correct that "RICO's nation-wide service of process provision allows for personal jurisdiction in any federal court that properly effectuates service, so long as the exercise of jurisdiction comports with the Fifth Amendment." *Galloway v. Martorello*, No. 3:19-CV-314, 2022 WL 17325982, at *2 (E.D. Va. Nov. 29, 2022). But this broad grant of authority is not without limits. "Some [RICO] claims may be so 'implausible, insubstantial, or frivolous' that they fail to state a 'colorable' RICO claim." *Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1003 (E.D. Va. 2021) (quoting *D'Addario v. Geller*, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003)). "In assessing whether a claim is colorable, courts look to whether a plaintiff pleads a RICO violation by alleging (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, as well as (5) injury in the plaintiff's business or property (6) by reason of the RICO violation." *Swarey v. Desert Cap. REIT, Inc.*, No. CIV.A. DKC 11-3615, 2012 WL 4208057, at *8 (D. Md. Sept. 20, 2012) (cleaned up). Plaintiffs fall woefully short of stating a plausible RICO claim.

Plaintiffs allege that "Defendants' acts of wire fraud . . . constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B)" and that "their fraudulent mortgage lending proposal schemes . . . resulted in the illegal, unlawful, or tortious activity of fraud and violations of [RICO]." (Am. Compl. ¶¶ 195, 199–200.) But to sufficiently assert a RICO claim based on fraud, Plaintiffs must "plead the circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b)." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989); *SS Richmond LLC v. Harrison*, No. 3:22CV405 (DJN), 2022 WL 16835870, at *7 (E.D. Va. Nov. 9, 2022). And, as noted, "when plaintiffs make fraud-based claims against multiple defendants, the plaintiff must plead with

specificity against each defendant . . . and allegations made against undifferentiated defendants violate this rule." *Foster*, 2008 WL 4829674, at *6 (cleaned up). Suffering from the same defect as the initial complaint, the amended complaint fails to allege any fraudulent conduct committed by the CMC Defendants and instead refers to all "Defendants" collectively. The amended complaint, therefore, fails to allege fraud with specificity as required to establish a colorable RICO violation. *See* Fed. R. Civ. P. 9(b).

The amended complaint also fails to allege any "pattern of racketeering activity," as required by the statute. *See* 18 U.S.C. § 1961(5). Establishing a pattern of racketeering activity requires a showing of "at least two predicate acts" and a scheme that "threatened the likelihood of continued criminal activity." *Id.*; *see H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989). On this score, Plaintiffs' amended complaint alleges almost nothing to support any predicate acts, other than patently conclusory statements.[9] The amended complaint's only assertion that comes close to alleging a pattern of racketeering activity is that, "[o]n information and belief Defendant Lustbader, Defendant Nelson, and Defendant Howell had previous financial dealings and business relations with one another." (Am. Compl. ¶ 66.)  But Plaintiffs fail to point out any specifics about these purported business dealings, let alone *facts* alleging that these previous dealings were fraudulent, or that other individuals were victimized as a result. *See Foster*, 2008 WL 4829674, at *8 (finding a failure to allege a pattern of racketeering activity where the Plaintiffs could not "allege with specificity that Defendants victimized anyone

---

[9] For example, the amended complaint includes bald statements such as, "Lustbader . . . acted as the mastermind and complicit in the scheme" by "us[ing] his business experience and access to funding to fraudulently and deceptively trick Dr. Waller in believing [*sic*] an actual deed was being made." (Am. Compl. ¶¶ 99–100.) Because this paragraph is the only one that mentions a deed, the court is left to wonder about its significance in terms of the alleged fraud, or how it *actually* relates to Lustbader or CMC's alleged conduct.

besides themselves[,]" because "Plaintiffs provide[d] no names, dates, or places with regard to any other victims."); *Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.,* No. CIVA DKC 2005-2882, 2006 WL 2572474, at *18 (D. Md. Sept. 5, 2006) (holding that no pattern was established despite plaintiffs' allegations that defendants operated similar fraudulent schemes against other victims, because "Plaintiffs d[id] not plead the fraud claims involving these other companies with adequate specificity.").

Similarly, the amended complaint also fails to allege that the CMC Defendants are likely to engage in ongoing criminal activity. To demonstrate ongoing criminal activity under RICO, Plaintiffs must show that "the predicate[ acts] are a regular way of conducting defendant's ongoing legitimate business." *H.J. Inc.*, 492 U.S. at 243. But here, even assuming Plaintiffs' allegations are true, they revolve around a single fraudulent transaction. Plaintiffs allege that Defendants Lustbader, Howell, and Nelson have all done business together before (Am. Compl. ¶ 66), but they fail to offer any specifics regarding those prior business dealings. The amended complaint does not indicate that these business dealings were illegitimate, or that the fraudulent conduct allegedly employed with respect to Dr. Waller was "a regular way of conducting" their business dealings.

Because the proposed amended complaint fails to plausibly allege that the CMC Defendants engaged in ongoing criminal activity to begin with, it falls well short of establishing, for purposes of stating a viable RICO claim, a threat of continuing criminal activity in the future. *See Pros., Inc. v. Berry*, 959 F.2d 231 (4th Cir. 1992) (noting that the Fourth Circuit has "rejected RICO pattern claims when plaintiffs . . . failed to show with specificity the existence of a distinct threat of continuing racketeering activity."). In sum, Plaintiffs cannot

use RICO to establish personal jurisdiction over the CMC Defendants because their amended complaint fails to allege a "colorable" RICO claim.

### 3. Virginia's Long-arm Statute

The final proffered jurisdictional basis, a provision of Virginia's long-arm statute, also does not confer jurisdiction over the CMC Defendants because there are no allegations that the CMC Defendants engaged in a "persistent course of conduct" in Virginia.

The provision of Virginia's long-arm statute on which Plaintiffs rely, states:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth *if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered*, in this Commonwealth[.]

Va. Code. Ann. § 8.01-328.1(A)(4) (emphasis added). To invoke this provision, Plaintiffs assert in conclusory fashion, that "Defendants . . . and each of them . . . [sold] and [offered] to sell . . . the investments described herein . . . and each of them, derived substantial revenue from obtaining such investments." (Am. Comp. ¶ 16.) But the remainder of the amended complaint is devoid of any factual allegations specific to the CMC Defendants showing that they ever conducted *any* business in Virginia aside from the instant, attempted transaction. Nor is there any credible allegation that the CMC Defendants solicited business within Virginia. Rather, the CMC Defendants were solicited by Forty Acre, which is not a citizen of Virginia.[10] Thus, this one-off transaction falls well short of establishing that the CMC Defendants engaged in a

---

[10] Forty Acre and its President, Dawson, are both citizens of Minnesota. (Compl. ¶¶ 9–10; Am. Compl. ¶¶ 9–10.)

"persistent course of conduct" in Virginia. "Put differently, the Virginia long-arm statute, by its terms, does not reach [the CMC Defendants'] alleged conduct." *Hassan v. Barzani*, No. 1:22-CV-1288, 2023 WL 3632732, at *4 (E.D. Va. May 24, 2023).

Accordingly, Virginia's long arm statute does not provide a basis for the court to exercise personal jurisdiction over the CMC Defendants.

### 4. Motion to Amend Conclusion

Because Plaintiffs' amended complaint does not cure the jurisdictional defects in the initial complaint, granting leave to amend would be futile. As such, the court will deny Plaintiffs' motion for leave to amend their complaint.

### III. CONCLUSION

Having found that the Plaintiffs failed to make a *prima facie* showing of personal jurisdiction, the CMC Defendants' motion to dismiss for lack of personal jurisdiction (ECF No. 26) will be granted. Additionally, because the Plaintiffs' proposed amended complaint does not cure the jurisdictional defects in the initial complaint, the Plaintiffs' motion for leave to amend (ECF No. 62) will be denied.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 21st day of June, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE