IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
7/15/2024
LAURA A. AUSTIN, CLERK
BY: s/ Christel Kemp
DEPUTY CLERK

| | |
|---|---|
| BRENDA SUE WALLER, MD and STRANGE FRUIT FARMS, LLC, | |
| Plaintiffs | Case No. 4:22-cv-00120 |
| v. | **MEMORANDUM OPINION** |
| HUGH JOHNSON ENTERPRISES, INC., | By: Hon. Thomas T. Cullen United States District Judge |
| Defendant. | |

Plaintiff Brenda Sue Waller ("Dr. Waller") sent nearly half a million dollars to a businessman in Florida as part of an effort to purchase commercial space in Virginia. As it turns out, that businessman—Tommie Nelson ("Nelson")—was likely a scam artist and, to date, has absconded with her money. Dr. Waller tried locating him to serve him with this lawsuit to recover her money, but she has been unsuccessful to date. She has, however, secured service on a corporation that Nelson allegedly used to receive most of Dr. Waller's funds. The time for that corporation, Defendant Hugh Johnson Enterprises, Inc. ("HJE"), to respond has passed, and the clerk entered default against it. Dr. Waller now moves for default judgment against HJE. Because HJE's actions through Nelson, as alleged, breached the terms of the agreement with Dr. Waller, she is entitled to default judgment and damages in the amount of $430,000.

### I. BACKGROUND

At all relevant times, Dr. Waller was "the Southeast Regional Director of a newly formed farmer's cooperative called Forty Acre Cooperative ("the Cooperative")." (Compl.

¶ 13 [ECF No. 1].) In 2020, the Cooperative was seeking "to purchase a brick and mortar building in order to grow, process, and distribute high-grade products derived from industrial hemp flower." (*Id.* ¶ 14.) In April 2020, Dr. Waller, on behalf of the Cooperative, located a suitable building in Danville, Virginia, and negotiated a purchase price of $848,000. (*Id.* ¶¶ 15–16.) At the direction of the President of the Cooperative, Angela Dawson, Dr. Waller signed the sales contract as an assignee of the Cooperative. (*Id.* ¶ 17.) Ms. Dawson sent a $10,000 deposit to the real estate agency as a showing of "good faith in negotiating the contract to completion." (*Id.* ¶ 18.)

Ultimately, it was determined that the Cooperative would finance $500,000 and pay a down payment of $350,000 to purchase the property. In an effort to secure the funding, a Cooperative board member connected Dr. Waller with Jeffrey Lustbader of Commercial Mortgage City Corporation, who arranged two phone interviews between Dr. Waller and Nelson of HJE as a potential source of the $500,000. (*Id.* ¶¶ 19–20.) Subject to some conditions, Nelson agreed to fund the purchase of the building, and Dr. Waller agreed to his terms: Nelson (and/or HJE) would finance the $500,000 and the Cooperative would pay the $350,000 down payment. (*See id.* ¶¶ 21–28.) At the time, Nelson stated that he did not want more than one partner. (*Id.* ¶ 25.)

For reasons that are unclear, the Cooperative either failed or was unable to make the $350,000 down payment, so Dr. Waller agreed to use her own money for it. (*Id.* ¶ 32.) She was to be listed as the purchaser of the property and the Cooperative would rent the building from her. (*Id.* ¶ 33.) Dawson agreed with this plan. (*Id.*)

"On or about June 26, 2020, . . . Nelson sent his terms [for] the [f]ive hundred thousand dollar[] ($500,000.00) loan" and indicated "that an additional [t]hirty thousand dollars ($30,000.00) in closing costs would be required." (*Id.* ¶ 35.) On July 11, Dr. Waller sent Nelson a $20,000 cashier's check "as a show of good faith." (*Id.* ¶ 36.) Nelson told Dr. Waller the closing would take place in six weeks, and Nelson "allegedly handled the settlement matters with the realtor, closing attorney[,] and insurance agency." (*Id.* ¶ 38.)

On July 28, Nelson required that the purchase contract be rewritten to list HJE as the purchaser rather than Dr. Waller. (*Id.* ¶ 40 & Ex. E.) That same day, Dr. Waller transferred $350,000 to HJE via wire transfer. (*Id.* ¶ 41 & Ex. F.) "Dr. Waller understood at [the] direction of . . . Nelson that this . . . money was to be forwarded to the closing attorney and held in escrow until closing." (*Id.* ¶ 42.) Dr. Waller also believed that Nelson was handling all the closing details and, as such, she had "no contact with the alleged closing attorney." (*Id.* ¶ 43.)

One of the realtors involved with the purchase, however, soon became "frustrated with the difficulty he was having" contacting Nelson and began contacting Dr. Waller. (*Id.* ¶¶ 44–45.) Nelson "indicated" to Dr. Waller that he was working to put the financing in place but that he was attempting to renegotiate the sales price "as he thought there were too many discrepancies with how the contract was handled." (*Id.* ¶ 46.) Nelson also "indicated that he had made attempts at contacting the banking officer in charge of the property, however felt that he was being blocked from contact." (*Id.* ¶ 47.)

Nelson also "communicated to Dr. Waller that he wanted to be a partner in the business and not just a lender." (*Id.* ¶ 50.) Accordingly, he had sought out Blackstar Mortgage, LLC, and arranged a pre-qualification for $3.9 million "to provide additional revenue for

operations and product development." (*Id.* ¶¶ 48–49.) Nelson "presented" Dr. Waller with the pre-qualification letter from Blackstar Mortgage "indicating that the funds were available to move forward with the closing." (*Id.* ¶ 48.)

On November 17, 2020, Dr. Waller transferred $70,000 to HJE "for closing fees and equipment acquisition in order to move forward" with the sale. (*Id.* ¶ 51 & Ex. H.)

On November 28, Lustbader contacted Dr. Waller and offered "assistance in helping to get the transaction complete" with Nelson. (*Id.* ¶ 52.) Lustbader "was informed that . . . Nelson had yet to provide any business documents and seemed to be evasive about details of the closing."[1] (*Id.* ¶ 53.) Nevertheless, on January 20, 2021, Dr. Waller transferred $10,000 to HJE "for additional charges." (*Id.* ¶ 54 & Ex. I.)

At some point, Nelson decided not to "move forward with the deal" and "cancelled the purchase agreement." (*Id.* ¶ 55 & Ex. J.)[2] Dr. Waller demanded the immediate return of the $450,000 she had sent to Nelson and HJE, but Nelson "said he needed additional time to return the funds to her." (*Id.* ¶ 56.) Dr. Waller filed several fraud complaints with her bank, and on August 25, 2021, she alleges that "Nelson provided an 'oral' promissory note to return the $450,000.00 . . . no later than October 31, 2021." (*Id.* ¶ 57.) Despite that promise, the funds were never paid, and the only explanation Nelson offered was that "'this other deal went bad' and he needed additional time to put the money together." (*Id.* ¶ 58.) Although Dr. Waller has

---

[1] Dr. Waller does not allege who informed Lustbader about Nelson's shady actions.

[2] Confusingly, the document cancelling the purchase contract was signed only by the real estate broker and was signed over a month *before* Dr. Waller sent Nelson the last $10,000. Perhaps tellingly, Dr. Waller does not allege *when* Nelson informed the parties that he was terminating the purchase agreement.

demanded repayment, Nelson "has stopped responding to [her] telephone calls, emails, or text messages." (*Id.* ¶ 61.)

On October 19, 2022, Dr. Waller filed suit against Nelson, HJE, Lustbader, Commercial Mortgage City Corporation, Brian K. Howell,[3] Blackstar Mortgage, Dawson, and the Cooperative, seeking $2 million in damages under various theories of fraud and breach of contract, conversion, conspiracy, intentional infliction of emotional distress, and violation of the Virginia Consumer Protection Act. (*See id.* ¶¶ 62–114.) For various reasons, only HJE remains as a defendant.[4] (See ECF Nos. 61, 70, 72, 83.) Dr. Waller served HJE, a Florida corporation, through substituted service on the Florida Secretary of State on or about April 21, 2023. (*See* ECF No. 53; Fla. Stat. §§ 48.081, 48.161; Fed. R. Civ. P. 4(h), 4(e)(1).) HJE did not respond to the complaint, so at Dr. Waller's request, the clerk entered default against HJE on February 13, 2024. (ECF No. 88.) Dr. Waller now moves for default judgment against HJE in the amount of $2 million. (*See* ECF Nos. 77, 78, 87.) To date, HJE has not made an appearance in this case.

## II. STANDARD OF REVIEW

The Fourth Circuit has "repeatedly expressed a strong preference that . . . claims . . . be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). But when a "properly served defendant . . . fails to plead or otherwise defend against the allegations in [a] complaint," the court is authorized to enter default

---

[3] Howell is the "Managing Partner and Agent" for Blackstar Mortgage. (Compl. ¶ 7.)

[4] Importantly, Dr. Waller has not secured a judgment (default or otherwise) against the Cooperative, Dawson, Lustbader, Commercial Mortgage City Corporation, Howell, Blackstar Mortgage, or Nelson.

judgment against that defendant under Federal Rule of Civil Procedure 55(b)(2). *Reynolds Innovations, Inc. v. E-CigaretteDirect, LLC*, 851 F. Supp. 2d 961, 962 (M.D.N.C. 2012). "To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)." *Pelyn Tr. v. Fair Exch. Tr.*, No. 3:08-cv-287, 2009 WL 2912521, at *1 (W.D.N.C. Sept. 3, 2009) (internal quotation omitted). After the clerk enters default, the court must determine if the complaint sets forth a legitimate cause of action, accepting the well-pleaded allegations of fact as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). "Although a defaulting party admits the factual allegations in the complaint, a court must evaluate the sufficiency of the allegations to determine if the complaint states a cause of action." *Bickley v. Gregory*, No. 2:16-cv-131, 2016 WL 6306148, at *3 (E.D. Va. Oct. 7, 2016). And claims for damages are not simply accepted as true. *See Lopez v. XTEL Constr. Grp., LLC*, No. Civ. PWG-08-1579, 2011 WL 6330053, at *4 (D. Md. Dec. 16, 2011). Instead, the plaintiff must establish its damages by way of an evidentiary hearing or submitting supporting evidence to the court. *Id.* (collecting cases). At bottom, the award of a default judgment is subject to the district court's discretion; it is not a matter of right. *See, e.g.*, *Leighton v. Homesite Ins. Co. of the Midwest*, 580 F.Supp.3d 330, 332 (E.D. Va. 2022).

### III.   ANALYSIS

Given the court's obligation to ensure that a default judgment is warranted under the circumstances, the court cannot enter default judgment of $2 million as requested; those claimed damages are simply not supported by the facts alleged and record evidence. But the

evidence and facts, taken as true, establish that Dr. Waller is entitled to $430,000 from HJE on her breach of contract claim, and the court will enter default judgment accordingly.[5]

Under Virginia law, a cause of action for breach of contract has three elements: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach." *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). Oral contracts are enforceable in Virginia, provided that the proponent of the oral contract can establish all the elements of an enforceable contract—offer, acceptance, and consideration. *See, e.g., Adams v. Doughtie*, 63 Va. Cir. 505, 2003 WL 23140076, at *11 (Dec. 31 2003) (citing *Richardson v. Richardson*, 392 S.E.2d 688, 690 (Va. Ct. App. 1990) and *Montagna v. Holiday Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980)). And every contract in Virginia has certain "implied covenants," including the covenant that the participants act in good faith and deal fairly with one another during the execution of the contract. *See, e.g., Frank Brunckhorst Co., LLC v. Coastal Atlantic, Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008) ("Under Virginia law, every contract contains an implied covenant of good faith and fair dealing; however, a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action."). "To prove a breach of the implied covenant of good faith and fair dealing under Virginia law, the plaintiff must establish '(1) a contractual relationship between the parties, and (2) a breach of the implied covenant.'" *Carr v. Fed. Nat'l Mortgage Ass'n*, 92 Va. Cir. 472, 2013 WL 12237855,

---

[5] Because Dr. Waller has established her entitlement to damages on her breach of contract claim, the court need not consider the merits of her remaining claims. *See, e.g., CMH Mfg. v. Neil*, No. JKB-21-0674, 2021 WL 2721757, at *4 n.3 (D. Md. July 1, 2021). If it did, however, most of her remaining claims would be insufficient against HJE.

at *4 (Oct. 8, 2013) (quoting *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)).

Here, the allegations—which the court accepts as true—establish that Dr. Waller entered into an oral contract with HJE through Nelson, "the Officer and Director for [HJE]." (Compl. ¶ 3).[6] HJE's agent—*i.e.*, Nelson—(1) offered to finance the purchase of the property for Dr. Waller and the Cooperative (the offer); (2) Dr. Waller agreed to Nelson's terms (the acceptance); and (3) Nelson directed Dr. Waller to, and Dr. Waller did in fact, transfer $430,000 to HJE as payment (the consideration) (*see id.* ¶¶ 41 ($350,000 as a down payment), 51 ($70,000 "for closing fees and equipment acquisition to move forward"), 54 ($10,000 "for additional charges")).[7] When HJE's agent failed to finance the sale as agreed and HJE instead kept the money Dr. Waller wired to it to facilitate and finalize the sale of the property, HJE violated the implied covenant of good faith and fair dealing it owed to Dr. Waller, and thus breached their contract. *See* Restatement (Second) of Contracts § 205 cmt. d (1981) ("Subterfuges and evasions violate the obligation of good faith in performance . . . .").

In sum, Dr. Waller's allegations establish that HJE breached the implied covenant of good faith and fair dealing in its contract with her. Accordingly, Dr. Waller is entitled to

---

[6] The complaint does not explicitly state that Nelson was acting on behalf of HJE (as opposed to furthering his own allegedly corrupt interests), but the facts alleged raise the reasonable inference that he was doing so (or at least acting on behalf of HJE and himself), especially considering that: (1) Dr. Waller alleges the first phone call was set up with "Tommie Nelson, Jr., (Defendant Nelson) **of Hugh Johnson Enterprises, Inc.**" (Compl. ¶ 20 (emphasis added)); (2) the overwhelming majority of the purchase funds were wired to HJE, at Nelson's direction; and (3) Nelson directed that the relevant real estate agreement be rewritten to name HJE as the purchaser (*id.* ¶ 40).

[7] Documentary evidence supports that $430,000 was wired to HJE. On July 28, 2020, Dr. Waller transferred $350,000 to HJE from "Waller-Graham Holdings, LLC." (*Id.* Ex. F.) On November 17, Dr. Waller wired an additional $70,000 to HJE. (*Id.* Ex. H.) And the final $10,000 was wired to HJE on January 20, 2021. (*Id.* Ex. I.)

judgment in the amount of damages that would make her whole. Her pleading indicates that $430,000 was transferred to HJE and is attributable to its breach of contract,[8] so default judgment will be entered in that amount.

## IV. CONCLUSION

HJE was served with process and failed to respond to the serious allegations raised against it. Accordingly, default judgment is appropriate, and Dr. Waller is entitled to judgment in the amount of the funds she wired to HJE. A separate judgment order will be entered.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Judgment Order to the parties, as well as to the United States Attorney's Office for the Western District of Virginia, care of Assistant U.S. Attorney Jason Scheff, for potential criminal investigation.[9]

**ENTERED** this 15th day of July, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[8] Dr. Waller wired the other $20,000 directly to Nelson, so that money is not attributable to HJE. Her claim for a further $1.55 million in damages is not established by her pleadings.

[9] If the allegations in the Complaint are true, there is sufficient cause to believe that Nelson may be criminally liable for wire fraud, among other federal offenses. Given the brazenness of his alleged actions and the substantial financial hardship that Dr. Waller suffered, federal prosecutors should take all reasonable measures to investigate this course of dealing. If a criminal prosecution is initiated in this court, another judge will be assigned to the case.